## MICHAEL W. MANNING *et al.*

*v.*

## SAMUEL FRAZIER.

*Filed at Springfield September 30, 1880.*

1. REAL ESTATE—*what constitutes.* Coal and other mineral in a mine and under the soil, are real estate, and as such are capable of being conveyed like any other real estate, and when once conveyed by deed, may pass by inheritance or deed of conveyance.

2. VENDOR'S LIEN—*for price of mineral in ground sold.* Where the owner of land, by deed, bargains, sells and conveys to another, his heirs and assigns, all the coal, limestone, iron ore, rock oil, and other mineral in, upon or under the land, with an express license to the grantee, his heirs and assigns and laborers to enter and search for said minerals, and to dig, mine, explore and occupy with the necessary structures, etc., and to mine and remove the coal,

etc., for which grant the purchaser agrees to pay to the grantor a stipulated price per ton for the various minerals removed, payable quarterly, the grantor will have a vendor's lien on the coal and mineral not mined and removed, for the purchase money, which he may enforce by a sale of the coal and mineral not taken from the ground. In such case the amount of the purchase money falling due each quarter depends upon the quantity of coal, etc., mined and removed from the land during the three months next preceding. The price agreed to be paid per ton is only a mode of ascertaining the amount of purchase money to be paid for the conveyance of the coal, etc., in the mine.

3. SAME—*waiver of lien—its extent.* If a deed conveying coal and other mineral in the ground on a credit, to be paid for quarterly, as the same are mined and removed, authorizes the sale of the coal, etc., before payment is to be made, that will only be a waiver of the vendor's lien *pro tanto* for what is thus removed, but not for the coal, etc., still in the mine.

4. LICENSE—*not transferable.* A mere license in writing, to mine, remove and sell coal, etc., the product of such mining to be paid for at a given price per ton, is not transferable, either by assignment or deed, so as to pass any legal right or title.

5. COVENANT IN DEED—*of its character.* A covenant in a conveyance of mineral in the ground, by the grantee to the grantor, to pay the latter a certain sum per ton for the mineral removed, is not a collateral covenant, but is a covenant to pay the purchase money for the sale of all the mineral in the manner specified.

WRIT OF ERROR to the Appellate Court for the Third District; the Hon. C. L. HIGBEE, presiding Justice, and the Hon. OLIVER L. DAVIS and Hon. LYMAN LACEY, Justices; —heard in that court on error to the Circuit Court of Vermilion county; the, Hon. OLIVER L. DAVIS, Judge, presiding.

Mr. JAMES E. MUNROE, for the plaintiffs in error:

A vendor's lien being secret is not favored. *Richards* v. *Leaming,* 27 Ill. 432; *Conover* v. *Warren,* 1 Gilm. 502; *Boynton* v. *Champlin,* 42 Ill. 64; *Doolittle* v. *Jenkins,* 55 id. 402.

The right of resale before the time of payment is a waiver of the vendor's lien, even if it would otherwise have existed. *Ex parte Parks,* 1 Glyn. & Jam. R. 228; *Brown* v. *Gilman,* 4 Wheat. 290.

If a sale is made on the personal responsibility of the vendee, no such lien will exist. 1 Lead. Cases in Eq. part 1, p. 487; *Albert Co.* v. *Western Soc.* Law Rep. 11 Eq. Cases, 178; *Earl of Jersey* v. *Briton Dock Co.* Law Rep. 7 Eq. Cases, 412.

A vendor's lien exists only on the sale of land, for the purchase money agreed to be paid as such. If the land is, by the terms of the contract, to be converted into personal estate and removed and paid for as such, after being so converted and removed, the sale is, in all essential respects, a sale of chattels, and no lien can be implied.

A contract for the sale of standing wood, to be cut and carried away by the vendee, is to be construed as passing only an interest in the trees when they are severed from the freehold. They then pass as personal property. *Douglas* v. *Shumway*, 13 Gray, 502; *Claflin* v. *Carpenter*, 4 Metc. 580; *Smith* v. *Surmam*, 9 Barn. & Cress. 561; *Marshall* v. *Green*, 1 Law Rep. C. P. Div. 35.

It is not material whether the severance is to be made by the vendor or vendee. *Whitmarsh* v. *Walker*, 1 Metc. 315.

There is no lien in favor of the vendor of chattels, after possession has been delivered to the vendee, or when, as here, the sale is made on credit. Benjamin on Sales, sec. 797; *Parks* v. *Hall*, 2 Pick. 206; *Cade* v. *Brownlee*, 15 Ind. 369.

When the consideration for the conveyance of land is the covenant of the grantee, and such covenant is substituted for the purchase money, or taken as a mode of payment of the price of the land, the vendor's lien will not be implied,—it will be waived.

If the covenants of the vendee are substituted for the purchase money and taken as a mode of payment for the land, the money due for a breach of these covenants is not purchase money, but simply damages, and there is no vendor's lien. *McKillip* v. *McKillip*, 8 Barb. 552; *McCondlish* v. *Keen*, 13 Gratt. 615; *Patterson* v. *Edwards*, 29 Miss. 27.

I refer to the following cases as announcing the same rule: *Brawley* v. *Catron*, 8 Leigh, 522; *Parrott* v. *Sweetland*, 3 Myl. & Keen, 655; *Winter* v. *Lord Anson*, 1 Sim. &. Stu. 435; *Clark* v. *Royle*, 3 Sims. Ch. 500.

The vendor's lien will not arise if the amount of the consideration is uncertain and unliquidated.   1 Perry on Trusts, sec. 235.

The bill does not aver a case of complicated accounts, nor a case involving any fiduciary relation, nor does it seek any discovery.   The items are all on one side.   The jurisdiction on the ground of account utterly fails.   *Porter* v. *Spencer*, 2 Johns. Ch. 169; *Pearl* v. *Nashville*, 10 Yerger, 179; *Dinwiddie* v. *Bailey*, 6 Vesey, 136.

But if there was a case for an accounting, the court erred in not referring the case to a master to take an account. *Moss* v. *McCall*, 75 Ill. 190; *Quayle* v. *Guild*, 83 id. 553.

Mr. D. D. EVANS, and Mr. C. M. SWALLOW, for the defendant in error:

The main question now before the court is whether, under the facts and circumstance as they appear in the bill, a vendor's lien exists in favor of the defendant in error, and can be enforced.

That, by the agreement copied in the record, there is an absolute sale and conveyance by Frazier of real estate to Squire and Payne, is fully settled by the following decisions and the authorities therein referred to: *Caldwell* v. *Fulton*, 31 Pa. St. 475; *Massot* v. *Moses*, 3 S. C. 168, reported in 16 American Reports, 697.

While it is true that such liens are not favored by the courts, yet, when they are shown to exist, they must be enforced.   They are maintained to protect the vendors of real estate and are the creatures of the vigilance of courts of equity.   *Wilson* v. *Lyon*, 51 Ill. 169; *Dyer* v. *Martin et al.* 4 Scam. 151.

Illinois has favored and enforced the remedy to a greater extent than most of the other States. *Grove* v. *Miles,* 71 Ill. 376; *Grove* v. *Miles,* 58 id. 339.

The consideration money remains a lien on the property until paid for, and no one could reasonably suppose that he could buy the property clear of the duty of payment. It is charged upon the land and stands in the title. So the Supreme Court of Pennsylvania has decided in a somewhat similar case. *Neas' Appeal,* 31 Pa. St. 293. And see authorities therein referred to.

If a vendor's lien exists in favor of Frazier, subsequent purchasers took with notice of such lien, and it can, therefore, be enforced against them.

The agreement was spread at large upon the records of the county where the real estate conveyed is situate. This was notice to all of its terms, conditions and provisions. They stood in the chain of title, and purchasers took with notice of them. *Chicago, Rock Island and Pacific Railroad Co. et al.* v. *Kennedy et al.* 70 Ill. 361; *Cordva* v. *Hood,* 17 Wall. (U. S.) 1.

The subsequent purchasers, who are parties to the bill, are chargeable with notice of the non-payment of the purchase money.

That which is sufficient to put purchasers upon inquiry is good notice. *Russell* v. *Ransom,* 76 Ill. 171; *Babcock* v. *List,* 57 id. 329; *Parker* v. *Foy,* 5 Am. Rep. 486; *Hamilton* v. *Nutt,* 34 Conn. 509.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Defendant in error entered into a written contract, on the 25th day of February, 1865, with John R. Squire and O. D. Payne, by which he, in consideration of one dollar and the agreements contained in the contract, bargained, sold and conveyed to them, their heirs and assigns, all of the coal, limestone, iron ore, rock oil, and other minerals in, upon or under a certain farm or tract of land, which was particularly

described, and containing 700 acres. The deed granted to them, their heirs or assigns, as well as their laborers and workmen, the right to enter upon and search for such minerals, and to dig, mine, explore, and occupy with necessary structures and buildings, and to mine and remove the coal, limestone, etc. And the parties of the second part were bound to enter upon and make search for coal, etc., within two years from that date. They, by the agreement, had the right to abandon the land and mining operations and remove all structures, etc., when the coal should be exhausted.

The parties of the second part were bound to have preparations made for taking out coal for market within two years. They bound themselves and their assigns to pay to the party of the first part twelve cents for each ton of coal and limestone mined and removed from the land, and for ore ten cents per ton, payments to be made quarterly. The agreement was recorded in the proper office.

Afterwards, the parties of the second part assigned the agreement to defendants, Sawyer, Manning and Clement. It is alleged that they entered under the agreement, and had mined and removed 25,000 tons of coal from the land, but had not paid the stipulated price therefor, or any part thereof, quarterly or otherwise; that three thousand dollars are due to complainant, under the agreement, and that sum is a part of the purchase money for the coal thus sold, and has become and is a lien on the coal and other minerals not yet mined or removed from the land; that complainant has never received any security for the purchase money, and has not waived or discharged it.

The bill alleges that Payne did not part with all of his interest in the contract, and that other parties, naming them, claimed some interest in the contract.

The bill makes all persons charged with claiming an interest in the agreement parties, and prays that an account be taken and the sum found due paid, and in default thereof the coal and other minerals still in the land be sold, and the

money arising from the sale be applied in payment of the amount that should be found due to complainant.

Clement answered, denying that Sawyer and Manning were the assignees of Squire and Payne, but that they did assign to one McGillen, who afterwards assigned to Sawyer, Manning and Clement; that he has never been concerned at any time in mining coal on the land, and denies that his one-third interest is liable for the payment of the money claimed to be due.

Sawyer, Payne and Crosby filed a demurrer to the bill. This demurrer was overruled by the court, and the demurrants failed to answer. The bill was dismissed as to Clement, and the relief prayed was granted as to the other defendants. They appealed to the Appellate Court for the Third District, in which the decree was affirmed, and the record is brought to this court on error.

The question is presented, whether these facts, admitted by the demurrer, afford grounds for the relief sought. Does complainant hold a vendor's or implied lien on the coal or minerals in the mine, and not yet removed, for the unpaid purchase money?

That the coal and other mineral in the mine, under the soil, was real estate, is too plain to admit of discussion. And it is equally true and manifest that, as such, it was capable of being conveyed like other real estate; and the coal, stone and ore thus situated was conveyed by complainant to Squire and Payne, and they thereby received an estate capable of being inherited and conveyed to others; and the bill alleges, and the demurrer admits, the estate was conveyed by Squire and Payne to plaintiffs in error. It, then, appears that complainant was a vendor; and, being a vendor, does he hold a lien that may be enforced against the remaining coal, stone and ore thus conveyed and not removed from the mine?

It is insisted, that the money claimed to be due is not purchase money, but is due, if at all, for and as the price of the

coal after it ceased to be real estate and had became personal property; that no money became due until the coal became personalty, and the agreement was to afterwards pay for the coal as personalty and not as real estate. It is undeniably true, that the time for payment did not elapse until after the coal had been changed from real to personal property. And if, according to the terms of the agreement, the title to the coal did not vest in plaintiffs in error until the coal was mined and removed, then complainant sold and they purchased coal as personalty and not as realty, and whatever is due, is purchase money for chattels and not for real estate. No rule of equity would justify the decree as a lien on the land, or the coal as land, for the purchase money of chattels, unless such a lien should be reserved by express agreement.

But is this the purchase money of the chattels, or of the real estate sold and conveyed by complainant? There can be no pretence that he ever received the price for which he sold the minerals as land.

If the price agreed to be paid for each ton of coal removed was, however, but a mode of ascertaining the amount of purchase money to be paid for the conveyance of the coal and other minerals in the mine, then the money as it became due was purchase money for the coal conveyed, as realty. The fair and reasonable construction of the instrument, we think, is that it was a sale and conveyance of the coal in the mine on credit, and to be paid at stated periods after the coal was removed, and that the amount of each of these quarterly payments was left indefinite, and the amount to be ascertained by computation from the number of tons removed during the previous three months, at the sum named for each ton. The time for payments to be made was not definitely fixed, and the amount of each payment was left contingent, depending upon the amount of coal removed during each period. But the money thus to be paid was purchase money for the conveyance of the coal, stone and ore. The title to the coal undoubtedly vested in the grantee in the deed, and there

is no pretence that it has ever been paid for or that any other mode of payment was ever agreed upon by the parties. If the purchase money for the coal sold and conveyed was not to be paid in this manner, in what mode was it to be paid?

But it is said that complainant waived the lien because the deed contemplates the sale of the coal before payments are to be made. The deed does not give the privilege, in terms at least, to sell any portion of the coal before payment, but if it does by implication it would only be a waiver *pro tanto* for the coal thus removed, and not as to that still in the mine. And the bill does not seek to enforce a lien against the coal already removed. If it were, then there would be force in the position. Were one person to sell to another, land covered with timber, and invest him with title by a conveyance, and the grantor would thereby empower him to remove and sell the timber, or suppose he were to consent in writing for the vendee to do so, and he were to remove and sell all of the timber, would any one contend that the vendor had thereby waived his vendor's lien? Surely not. All can see he would thereby waive his lien on the timber in the hands of a purchaser, but not on the land itself. So, of the removal of stone, gravel, sand or earth.

It is said the decree gives a lien on the coal not yet mined and removed for the purchase money thereon, which is not due. This is manifestly a misconception of the question. When the conveyance was made, the lien attached to all of the coal, etc., in the mine. It attached as a whole and not in fragments. The price for each ton did not become a lien on each several ton, but the whole purchase money became a lien on all of the coal, etc., in the entire mine. And the sum which became due on the removal of coal remained as it was previously, a lien on the balance which remained to be mined. Hence the decree is for the purchase money which had become due, and for the sale of the unmined coal for its payment, thus enforcing the lien.

It is urged, that this is but a license to mine, remove and sell coal, etc., and to pay therefor the prices fixed on the various minerals. If this be true, plaintiff in error acquired no legal rights by the assignment of the deed, whether by conveyance or otherwise. If this was but a license to Squire and Payne, then it is not the subject of a conveyance of any legal right or title, yet plaintiff in error claims the right to mine, remove and sell the coal mentioned in the grant.

Again, it is claimed, the agreement to pay for the coal is but a collateral covenant; and in support of the proposition, cases are referred to where conveyances were made and the vendee covenanted to pay the grantor an annuity for life, or to support him for life, or to pay money to others, which were held to be collateral covenants, and a vendor's lien did not attach. The cases are, no doubt, correctly determined, but they are entirely unlike this. Here the covenant is to pay the purchase money directly to the vendor, in the manner specified. We fail to see that this covenant to pay is collateral, or relates to anything collateral, to this convey-ance. The sum named for each ton of coal, stone or ore removed was but a mode of ascertaining the amount of consideration to be paid at each installment, and not as a sale of each of the various minerals when removed; and, if this be true, and of which we entertain no doubt, when the conveyance was made, the unpaid purchase money became a lien on all of each kind of mineral, and when the money became due by removing one kind, it did not release or remove the lien on another kind. The minerals were sold, the purchase money was not paid, and, as complainant did nothing manifesting an intention to waive his vendor's lien, equity will hold that it attached and must be enforced for the amount of purchase money due and unpaid.

This case is wholly unlike those where the grant is of personal property savoring of the realty, which was to be removed and sold as chattels, and the vendor endeavored to enforce an implied or vendor's lien against the chattels. Such

a lien does not attach to chattels. After this coal, stone or ore is mined, complainant has no lien on the chattels, but as long as it remains undisturbed in the mine, it is realty, and is subject to the lien.

After a careful consideration of the whole case, we are unable to perceive any error, and the decree is affirmed.

*Decree affirmed.*

SCOTT, SHELDON, and SCHOLFIELD, J.J.: We do not concur in this opinion.