McIlyaine, J.
That the stipulations contained in the mortgage of December 6, 1876, executed by James L. McClurg to the trustees of Rayen school were sufficient to transfer the interest now in controversy, is not disputed. The sole contention between the parties is as to the sufficiency of the mortgage executed by James L. McClurg to Darius M. McClurg on the *47 30th of August, 1876, to transfer such interest to the mortgagee. This mortgage, in form and by its terms was a real estate mortgage — nothing more.
The principal question involved in this contention is, whether or not James L. McClurg, at the date of this mortgage, was seized of an estate or interest in the land therein described. The solution of this question depends on the proper construction of the instrument of September 28,1867, between Adam McClurg and Jacob Stambaugh and his associates.
Confessedly, James L. McClurg, at the date of the mortgage to Darius, had no interest in the land therein described, unless it was an interest in the coal in place. If he had such interest, it was under the will of his father, Adam McClurg; and whether his father had any interest in -the coal as land, which could pass to his devisee, depends upon the legal effect to be given to the instrument of September 28, 1867.
That coal in place may be granted and conveyed as land, separate and apart from that which overlies or underlies it, is not disputed. This brings us to the exact question in the case — what was the intention of the parties as gathered from the whole instrument of September 28, 1867 ?
The granting clause is as follows : “That in consideration of one dollar paid by said second to said first party, and also of the covenants and agreements of the second party, to be performed as hereinafter stipulated, the said first party has agreed to sell, and does hereby give, grant, bargain, sell and convey unto the said second party their heirs and assigns the following described stone coal, mining rights and privileges, to wit: All the stone coal lying and being in, under and upon the following lands, to-wit.” That this language was sufficient to transfer a fee simple estate in the coal, is too plain to admit of discussion. The intention of the parties to transfer a fee simple estate in the coal, must be found from this language, unless we find in other parts of the instrument, a contrary intention expressed in words equally plain and unequivocal.
We do not find in the instrument any other language which, by fair and reasonable interpretation is not entirely consistent with the intention so clearly expressed by the terms above *48 quoted, except in the last' paragraph, which reads as follows : “ It is mutually understood and agreed that said second party their heirs and assigns shall have the right to abandon this contract and yield up said coal mine and privileges at any time they shall determine in their judgment that said coal is, in quantity, quality or condition, no longer minable with economy and profit; and when this contract shall be ended, for any reason, said second party their heirs or assigns, shall have the right to remove their machinery and other structures and property from said land. ”
The exact import or legal effect of this language is not clear. The defendant in error claims that, when construed in connection with other parts of the instrument it shows the intention of the parties to have been to make a lease of the coal, or to grant a license to enter and mine. Either of which would be inconsistent with the intent to convey a fee. To this it may be answered, that the subject matter of the contract was land —coal in place. It is very clear that the parties intended that the coal should be mined by the grantees and thus converted into personalty and disposed of by them. The coal was not to revert to the grantor. Nothing was to be returned to him except the consideration to be paid for the thing granted. Such is not the nature of a contract of lease. It was a sale of the coal for a consideration. True, a license was granted to enter on the lands of the grantor to mine and remove the coal conveyed — the coal of the grantees, not of the grantor.
On the other hand, we think, effect can be given to the terms of the grant, and also to the stipulations of the contract last quoted.
With regard to these stipulations, it may be said, with much show of reason, that the parties thereby intended to save and' except from the grant, such coal as could not, with economy, be mined with profit. If this be not the true interpretation, then, we think, the right reserved to the grantees to abandon the contract, when they may determine, in their judgment, no more coal remains in the premises, which, with economy, may be mined with profit, must be construed as a condition upon the happening of which, the estate granted is determined, and *49 tlie unminable coal reverts to the grantor, liis heirs, assigns or devisees. This right to abandon the contract, does not rest in the mere will and pleasure of the grantees, their heirs or assigns, but upon their judgment exercised in good faith. Cook v. Andrews, 36 Ohio St. 174. So that, upon either interpretation, all minable coal, or, at least, all that was min-able in the judgment of Stambaugh and his associates and their heirs and assigns, passed absolutely, as lands, from Adam McClurg to the grantees named in the deed of September 28, 1867.
This being so, it follows that no estate or interest passed by the will of Adam McClurg to James L. McClurg in the coal as land, which had been previously conveyed by the deed from Adam McClurg to Stambaugh and his associates; and, of course, the mortgage from James to Darius did not create a lien on property not owned by the mortgagor. True, at the date, of this mortgage, James had an interest in all the moneys due and to become due from the Yienna Coal and Iron Company ; but as the mortgage was upon real estate alone, it did not cover the interest of James in such moneys; and, were it true, that J ames intended to pledge'his interest in these moneys to Darius, the trustees of Rayen school are not affected thereby, for the reason that they loaned money upon the faith of this security without actual knowledge of such intention, and the mortgage was not constructive notice thereof.
This is not a case for the application of the doctrine, that a mortgagee, after condition broken, may demand the rents from a lessee of the mortgaged premises. The Yienna Coal and Iron Company is not lessee of any part of the premises mortgaged by James L. to Darius M. McClurg. The moneys due and to become due from the company under the deed, September 28,1867, are not rents, but purchase money.
The conclusion to which we have arrived is fully sustained by the case of Manning v. Frazier, 96 Ill. 279.
In Caldwell v. Fulton, 31 Pa. St. 475, the court went much further and held that by a deed in which there were no words importing a grant of the fee, but which gave absolute dominion over the stone coal in certain lands to the grantees, who *50 agreed to pay a certain and fixed sum in sólido, a conveyance of the coal in place, passed absolutely.
Without referring to other cases, I will merely add, that I know of no case, where, upon similar facts, a different conclusion was reached.

Judgment reversed.

Okey, J.
In my opinion the district court did not err. Much depends, in the proper determination of this case, upon the instrument executed by Adam McClurg, hereinbefore set forth, in the construction of which instrument regard must be had to the words in which it is expressed, applied to the facts then known to the parties. The granting clause is quoted in the opinion of the majority, and it is said that it is sufficient “ to transfer a fee simple estate in the coal,” and that the estate so granted cannot be cut down except by words equally clear. But it is not denied that the words which follow the granting clause show that a fee simple was not intended. “It cannot properly be a fee simple, if it is either base, conditional or qualified.” 1 Wash. R. P. (4th ed.) 78, n. 1. Finding that no indefeasible estate was conveyed, the rule invoked has no application, and we must seek the meaning of the instrument by exploring all its terms. Jackson v. Myers, 3 John. L. 388.
It is not denied that if the instrument is a lease of the <3oal, the mortgagees, Darius M. McClurg and John McClurg, became entitled, on condition broken, to the rents that subsequently became due. Burden v. Thayer. 3 Met. (Mass.) 76. But they are entitled to the sums becoming due annually, even if the instrument were not a lease ; for something more than a naked possibility of reverter — something more than a mere possibility of expectancy, not coupled with an interest in, or growing out of the property — remained in Adam McClurg, and consequently in the mortgagor, who succeeded to his interests, and hence there was an interest which could be effectually mortgaged to Darius M. and John. 1 Jones on Mortg. § 136. It will be observed that by each of those mortgages, the mortgagor grants, bargains, sells and conveys to the mortgagee all his right, title and interest in the premises.
*51 No doubt one owning land in which there is unmined coal, may convey to another a fee in the coal, if he have a fee, or he may convey a less estate; or such owner may give to another license or permission to mine such coal, and such license or permission may be made to assume the form of a lease. Leases may be at will, for years, for life, or of perpetual duration; and, whatever the term, it may be subject to conditions, whereby it may be defeated or terminated. Warner v. Tanner, 38 Ohio St. 118.
In my opinion the instrument executed by Adam McClurg is a lease; and I am led to the conclusion, by the following among other considerations — taken together and not singly— that violence is done to the intention of the parties by any other construction:
1. The consideration named is one dollar, and “ the covenants and agreements of the second party, to be performed as hereinafter stipulated,” by force of which provision and others in the instrument, a forfeiture might be decreed for violation of the covenants. "
2. The things contracted about were mining privileges— “ stone-coal mining rights and privileges, to wit, all the stone-coal lying and being in, under and upon the lands” (described) with the right to enter on the lands, search for coal, and mine and remove such coal.
3. Why reserve the light to dispose of the coal if a fee was granted ?
4. The parties of the second part agree “ to pay all taxes or public charges of every kind, national, state or municipal, that may be assessed upon said coal, or upon any of the machinery or structures of said second party.” But by the act of 1859 (4 Ourwen, 3309, § 9), then and still in force (Rev. Stats. § 2192), where the fee of the soil is in one person or corporation and the right to the coal in the land in another, the soil and the coal must be “valued and listed agreeably to such ownership in separate entries, and traced to the parties owning the same respectively.”
5. The money consideration is not a sum in solido, nor even a uniform sum each year, but nine hundred dollars “ on *52 the first day of October, and in each year during tho continuance of this agreement,” and thirty cents in addition for each ton above 3000 mined in any year, and “ payments made in any year in excess of coal actually mined in such year shall be applied in excess of coal mined in after years over said stipulated quantity.” These provisions seem very proper, if we consider them as prescribing a mode of fixing the amount of rent to be paid; but this is not a usual or natural way of stating the consideration for a conveyance of real property.
6. The parties of the second part have the right to abandon at any time. In the opinion of the majority two theories with respect to this provision are suggested, neither of which, if established, would prove this judgment to be erroneous. In support of the latter, i. e., that the right to abandon must be exercised in good faith, Cook v. Andrews, 36 Ohio St. 174, is relied on ; but the lease construed in that case was quite different from this instrument, and lam unable to see that the decision sheds any light on this case. Here the provision is too plain to be misunderstood: “It is mutually understood and agreed” — so the instrument provides — •“ that said second party, their heirs and assigns, shall have the right to abandon this contract and yield up said coal mine and privileges, at any time they shall determine, in their judgment, that said coal is in quantity, quality or condition no longer minable with economy and profit; and when this contract shall be ended for any reason, said second party, their heirs ’ or assigns, shall have the right to remove their machinery and other structures and property from said land.” That this conferred power to abandon which was practically unlimited, I cannot doubt.
7. The parties speak of the instrument as a “ contract ” and an “ agreement.”
8. The wife of Adam McClurg, then and still living, is not a party to the instrument, nor does it appear that she was requested to sign it.
9. The parties of the second part caused the instrument to be recorded in the record of leases and not elsewhere. The recorder was then and still is required to keep four sets of records, in one of which deeds, and in another, leases are to be recorded. *53 S. & C. 1278 ; S. & S. 655 ; Rev. Stats. § 1113. And in the answer of the Vienna Coal and Iron Co. it is said that “ it is the owner and holder of the coal lease and contract, and the coal, coal mining right, privilege and easements therein and thereby granted and conveyed by Adam McClurg:. . That the stipulated annual coal rent, therein provided, whether coal has been mined or not to meet the quantity of 3,000 tons of 2210 pounds to the ton, at 30 cents per ton, being $900 per year, has been regularly paid in advance, and sufficient coal has not yet been mined from said land to equal said advance yearly rents paid ; that there is nothing now due on said coal lease for rent or royalty from this respondent, or from the lessees in said lease, and nothing will become due thereon until October 1, 1878, when $900 more will become due on the whole lease, provided,” etc. This shows very clearly how the instrument has been regarded. “ Tell me what you have done under such a deed, and I will tell you what that deed means.” Attorney General v. Drummond, 1 Drury & Warren, 353, 368 ; aff. 2 H. of L. 837; Whart. Con. § 653.
In support of the judgment of reversal in this case, two decisions are cited in the opinion of the court. One of these is Caldwell v. Fulton, 31 Pa. St. 175, which is said to hold that by a deed in which there were no words importing a grant of the fee, but which gave absolute dominion over the stone coal in certain lands to the grantee, who agreed to pay a certain and fixed sum in solido, a conveyance of the coal in place passed absolutely. But an examination of the case will show that whatever was granted was in terms granted to the grantee, his heirs and assigns, for a sum in solido. The objection was that a grant of the privilege of digging and carrying away coal, did not grant the coal; but the court overruled the objection, and properly. 3 Wash. R. P. (1th ed.) 382. The little application the decision has to this case is in favor of the view I have endeavored to maintain. See cases cited by counsel, in which that case is commented upon ; also, Union Pet. Co. v. Bliven Pet. Co., 72 Pa. St. 173 ; Scranton v. Phillips, 94 Pa. St. 15; Grubb v. Grubb, 71 Pa. St. 25.
The other case relied on in the opinion is Manning v. Fraz *54 ier, 96 Ill. 279, in which the opinion vras delivered by Walker, J. Three judges concurred with him, and an equal number dissented. Aside from that, the case falls far short of supporting this judgment.of reversal. The instrument under consideration there, was a conveyance to one and his heirs, of all the coal-in a described lot of land. He was not obliged to mine or pay for any particular quantity in any year; he was only permitted to abandon the mine “ when the coal should be exhaustedthe instrument was recorded in the proper record of conveyances; and other grounds upon which my opinion as to the proper construction of this instrument is based, do not apply to the instrument under consideration in that case.
Additional reasons might be given in support of the judgment of the district court; but I should not devote further time or space to the subject.