# BLACK *v.* ELKHORN MIN. Co., Limited.

*(Circuit Court, D. Montana.* February 25, 1892.)

**1. MINING CLAIM—NATURE OF ESTATE—DOWER.**
A mining claim in the public domain, as defined by Rev. St. U. S. § 2322, is a subject of dower, since the estate is one of inheritance, and the owner has a possessory title of the highest kind.

**2. SAME—PATENT—MERGER OF CLAIM.**
When a person in possession of a mining claim obtains a patent therefor, after posting notices, making proofs of work, and paying five dollars per acre, as required by Rev. St. U. S. § 2325, the claim, as a separate estate, is merged in the full fee-simple title.

**3. SAME—DOWER.**
When such a merger takes place, a right of dower in the subordinate estate is extinguished, if the owner thereof has filed no adverse claim in the register's office against the application for a patent.

At Law. Action by Mary A. Black against the Elkhorn Mining Company, Limited, to recover dower in a mining lode. A demurrer to the complaint was overruled. 47 Fed. Rep. 600. The hearing is now upon a demurrer to new matter in the answer. Overruled.

*Word, Smith & Word,* for plaintiff.

*Cullen, Sanders & Shelton,* for defendant.

KNOWLES, District Judge. The plaintiff, **Mary A. Black,** brought this action to have dower assigned her in the A. M. Holter lode, situate in Elkhorn mining district, Jefferson county, Mont. The complaint sets forth that L. M. Black was the husband of plaintiff; that in his lifetime he was seised of an estate of inheritance in the said A. M. Holter lode; that he conveyed the same to one Burton, and that by mesne conveyances the title possessed by him passed to defendant; that plaintiff did not join in this conveyance to Burton, and never at any time relinquished her dower in any way in said premises. The defendant, it appears, is a corporation. It denies all these allegations of the complaint, and then sets up several averments of new matter constituting a defense to the cause of action set forth in the complaint.

The plaintiff filed her demurrer to this new matter. I find myself somewhat perplexed in considering the same. The first ground set forth in this new matter is to the effect that plaintiff ought not be endowed of the property described in the complaint, because L. M. Black, her husband, was not at the time of his marriage with plaintiff, or at any time thereafter, seised of "said tenements, with the appurtenances whereof plaintiff claims to be endowed." This seems something like the averment of a conclusion of law. The third averment of new matter for a defense is that the Elkhorn Mining Company, the grantor of defendant, being seised of the premises and possessed thereof, applied for a patent to said premises from the United States, and that plaintiff filed no adverse claim to this application, and that on the 19th day of November, 1889, the United States issued a patent to said Elkhorn Mining Company for said land. Considering these two defenses together, and the arguments and

briefs of counsel, and it is evident that the two points sought to be presented are: *First,* that there is no dower in an unpatented mining claim; and, *second,* that, if plaintiff had any dower-right in such a claim, it was lost by plaintiff failing to file an adverse claim to the application of the Elkhorn Mining Company to patent the same.

The first of these propositions I will now consider. Is there any dower-right in a mining claim, under the laws of Montana? And in answering this question I am called upon to determine what is the nature of the estate in a mining claim. The 2322d section of the Revised Statutes of the United States provides:

"The locators of all mining claims heretofore or which shall hereafter be made on any mineral vein or ledge or lode situate upon the public domain, their heirs or assigns, when no adverse claim exists on the 10th day of May, 1872, so long as they comply with the laws of the United States, and local regulations not in conflict with the laws of the United States, governing their possessory title, shall have the exclusive right of possession and enjoyment of all the surface included within the lines of their location, and of all veins or lodes and ledges throughout their entire depth, the top or apex of which lies inside of such surface lines extended downward vertically."

I have been unable to find any language similar to this in any deed or other grant. The supreme court, in the case of *Forbes* v. *Gracey,* 94 U. S. 762, says:

"The use of the word 'mining' or 'mining claims' is evidently intended to distinguish between the case in which the miner is the owner of the soil, and therefore has a perfect title to the mine, and those in which the miner does not have title to the soil, but works the mine under what is known in the 'mining district,' and what is, as we have said, recognized by the act of congress, as a mining claim."

At another place in this opinion the court says of a mining claim: "It is property in the miner of great value." And again: "These claims are subjects of bargain and sale, and constitute, very largely, the wealth of the Pacific coast states." And again: "This claim may be sold, transferred, mortgaged, and inherited."

In all this there is no very clear statement as to the nature of the estate in a mining claim. The only definite proposition is that the miner owning a mining claim does not own the soil embraced within the lines of his claim.

In the case of *Erhardt* v. *Boaro,* 113 U. S. 527, 5 Sup. Ct. Rep. 560, the supreme court again say:

"The government of the United States has opened the public mineral lands to exploration for the precious metals, and, as a reward to the successful explorer, grants to him the right to extract and possess the minerals within certain prescribed limits."

Again:

"Discovery and appropriation are recognized as the source of title to mining claims."

In the case of *Belk* v. *Meagher,* 104 U. S. 279, the supreme court holds this language:

"Congress has seen fit to make the possession of that part of the public lands which is valuable for minerals separable from the fee, and to provide for the existence of the exclusive right to the possession while the paramount title to the land remains in the United States."

Again, in speaking of the location of a mining claim, it said:

"When perfected, it has the effect of a grant by the United States of the right of present and exclusive possession."

Taking the statute and these decisions together, and we find that the locator of a mining claim has a "possessory title;" that it is property, in the highest sense of that term; that it may be sold, mortgaged, and inherited; that he may enjoy this possession, and all lodes whose apex lies within the surface lines of his location, through their entire depth, and that he may mine and extract, and appropriate to his own use, all the minerals therein; and that this right comes by virtue of a grant from the United States, the owner of the soil. Let us turn to some of the decisions of state courts, and see how certain language in private grants have been construed. In the case of *Caldwell* v. *Fulton*, 31 Pa. St. 475, in a conveyance in which this language was used, namely, "also the full right, title, and privilege of digging and taking away stone-coal, to any extent the said George Greer may think proper to do or cause to be done, under any of the land now owned and occupied by the said James Caldwell: provided, nevertheless, the entrance thereto and the discharge therefrom be upon the foregoing described premises," it was held that all the coal beneath the tract of land occupied by said James Caldwell was conveyed as a corporeal hereditament, and that they did not import simply a license. Here the right to be considered is that, in connection with the possession of the lode, the locator had a right to extract and appropriate all ores found therein, to any extent. The right is unlimited. A grant of coal in place is a grant of it as land. *Emery Co.* v. *Lucas*, 112 Mass. 424; *Manning* v. *Frazier*, 96 Ill. 279; *Hartwell* v. *Camman*, 10 N. J. Eq. 128. There is undoubtedly a distinction to be drawn between a grant of coal or minerals in place, and the grant of the right to extract and appropriate to one's own use such articles. Yet, as in this case, where the right to dig and appropriate such ores is an exclusive right, which passes to one's heirs and assigns, and this right extends throughout the entire depth of the mine, it is very difficult to distinguish it from a case where a man receives the title to coal in place. When a man receives a grant of all the beneficial interest in an estate, he receives the estate. The simple right to dig and carry away ores is an entire thing, and cannot be divided, so as to have the same shared by several under the original claimant or proprietor. 2 Washb. Real Prop. 379. There has never been any doubt but that the locator of a mining claim could give any number of men the right to separately dig and carry away ores generally, or to a specific amount.

There is an interest in land called "*profit a prendre*." It is the right of taking soil, gravel, minerals, and the like from the land of another. Washb. Easem. 11. In the case of *Erhardt* v. *Boaro, supra*, the supreme

court held that a minor had the right to extract and possess the mineral found in his location. A *profit a prendre* is an interest in the estate. *Post* v. *Pearsall*, 22 Wend. 425; *Pierce* v. *Keater*, 70 N. Y. 419. In many particulars the right of a locator of a mining claim is similar to this right of *profit a prendre;* but the owner of this last right has not, as I have been able to find, any such right as the exclusive possession and enjoyment of the mine from which he takes his ore. It may be that we cannot classify a mining claim under any of the heads which have been used to describe real or personal property, and it may be *sui generis*. In all this western region, where mining for precious metals exists, a mining claim has been considered as real property, as an interest in land. It is sold and conveyed by deed. Actions for the recovery of possession of real estate apply to it; also, actions to quiet title; for trespass upon the same. An action of *quare clausum fregit* applies. They have always been treated as real estate in the succession and distribution of estates of deceased persons. This view was entertained by Judge HALLETT in *Harris* v. *Mining Co.*, 8 Fed. Rep. 863. It was held to be real estate in *Houtz* v. *Gisborn*, 2 Min. Rep. 340; *Merritt* v. *Judd*, 6 Min. Rep. 62; *Belk* v. *Meagher*, 3 Mont. 79. It is evident, too, that the words "heirs and assigns," in the statute making the grant of a mining claim, are not words of limitation, but are used to designate the estate conveyed as one of inheritance. The words "lands" and "real estate" are used in the statutes of Montana as synonymous terms. The definition of both is the same. See section 202, Comp. St. Mont. p. 648. Plaintiff would then have dower in the property as a mining claim.

The next point for consideration is as to the effect a patent from the United States to the Elkhorn Mining Company of the A. M. Holter lode would have upon this right of dower in the same, as the title to the same existed before patent therefor. Perhaps plaintiff, never having been assigned her dower in said claim, could not file an adverse claim to the application of the Elkhorn Mining Company for a patent therefor; but I think she might have had proceedings for a patent stayed until her dower could have been assigned her, and then she could have presented her rights. Plaintiff claims that the title held by her husband in the A. M. Holter lode was an equitable title, and that the patent title was only a completion of the same. There is no claim that her husband had paid the government price for said land, or performed the other acts which in connection therewith would entitle him to a patent from the United States; but the claim is that the locator of a mining claim has an equitable title to the same from the United States. I do not think this can be maintained. In the case of *Belk* v. *Meagher*, 3 Mont. 79, the supreme court of Montana held that the title to a mining claim was a legal title. Until a person who has located a mining claim has done everything the United States statute requires upon an application to purchase the same from the United States, and has paid the purchase price thereof, he cannot be said to have any equitable title in that estate not vested by the mining location. The right to purchase from the United States the premises upon which a mineral location has been made by the possessor

of the same is not an equitable estate in the premises.   It has been held
by the supreme court of the United States that the right which a settler
has upon public lands, to pre-empt them, is no estate in such lands, al-
though actually settled upon by him.   *Hutchings* v. *Low,* 15 Wall. 77;
*Frisbie* v. *Whitney,* 9 Wall. 187; *Wirth* v. *Branson,* 98 U. S. 118.   In the
case of *Forbes* v. *Gracey, supra,* the supreme court held that the United
States had not parted with the title to lands in which minerals were
found by the location of a mining claim; and in the case of *Belk* v.
*Meagher, supra,* it was held that the paramount title was in the United
States to land held as a mining claim.   In section 2325, Rev. St. U. S.,
there is a provision made for the purchase of these lands.   While in all
of this I do not think there is anything that is inconsistent with the posi-
tion before maintained, that an estate called a "mining claim" had been
carved out of the estate the United States held in these lands, by virtue of
a mining location on the same, yet it is apparent that the government has
a large estate in such lands, not disposed of by such location.   In the
estate created by the location, the plaintiff was entitled to dower.   In the
estate held by the United States, she had no such right.   Persons who
make the proper application to patent a mining claim, post the proper
notices, and make the proper proofs of work, etc., and pay the price of
five dollars per acre, are, under the provisions of said section 2325, en-
titled to a patent; and where no adverse claim appears to this applica-
tion the language of the statute is:

"If no adverse claim shall have been filed with the register and the receiver
of the proper land-office at the expiration of sixty days of publication, it shall
be assumed that the applicant is entitled to a patent upon the payment to the
proper officer of five dollars per acre, and that no adverse claim exists."

The patent conveys the paramount title to the applicant, and by virtue
of the statute the patent is presumptive proof that the applicant was the
owner of the mining claim conveyed thereby; and this cannot be contro-
verted except for fraud, or a mistake on the part of the officers of the
land department as to the law applicable to the conceded facts in the
case.   What becomes of the estate called a "mining claim" after a pat-
ent issues?   As I have said, the presumption created by the patent is
that the applicant was the owner of this mining claim.   The patent gives
the paramount estate.   These two meeting in the same party, the lesser
estate, which is the mining claim, becomes merged in the greater estate,
that is received by virtue of the patent.   From the necessities of the case,
this must be so.   The mining claim is a contingent estate.   It is kept
alive by the performance of $100 worth of work each year.   If this work
is not performed the claim is forfeited, and the land embraced within its
bounds becomes public domain.   Can it be that, after a patent is ob-
tained, any work can keep this estate, called a "mining claim," alive,
and subject it to forfeiture?   Take the case in hand.   Dower is claimed
in two-fifths of the A. M. Holter lode claim.   Will three-fifths of this
claim merge in the patent title, and two-fifths remain without this
merger?   It is evident congress had the intent to create this merger by
providing for the conveyance of the paramount title to the owner of the

claim, and to no one else. The general rule is that when merger takes place as to two estates in land the inferior perishes. 13 Amer. & Eng. Enc. Law, 313, tit. "Merger." The estate called a "mining claim" in the A. M. Holter lode perished when the Elkhorn Mining Company received a patent for the same. It then ceased to exist. No estate was then left in which plaintiff could claim dower. As I have said, the patent raised the presumption that the mining claim was owned by the applicant, and that this ownership was free from any claim on the part of plaintiff. At the issuing of the patent this mining claim became merged in the paramount title, and perished; and no estate is in the defendant out of which plaintiff can ask to have dower assigned. This case is analogous to that of a base fee. When a base fee is destroyed by the paramount title, dower in the same is lost. *Jackson* v. *Kip,* 8 N. J. Law, 241; *Toomey* v. *McLean,* 105 Mass. 122.

I have not considered fully the effect of the statute of Montana which provides that the husband, being a citizen of the territory of Montana, might convey the full title to real estate by his deed, when his wife was not living in the territory of Montana. There may be some question as to when a person could claim to be a citizen of a territory, and when the wife could be said to be living in some other locality than the territory. The practical construction which has been placed upon this statute in Montana, for years, has been that if the permanent residence of the husband was in Montana, and his wife did not make her home with him, but lived in some other state or territory permanently, or without any definite purpose of coming or returning to the territory, the husband could convey his real property so as to exclude dower by his own deed. The truth is that, at the time this statute was enacted, Montana was a new country, and there were many men living therein, actually engaged in extensive business, and purchasing and transferring real estate, who had wives in the states who permanently resided there. Owing to this condition of society, much trouble was experienced in the conveyance of real estate, and many apprehensions for fear that the title to real estate conveyed might some day be incumbered by a claim of dower from some wife, whose existence was unknown at the time of the conveyance. To meet this condition of affairs, this statute was enacted; and to this extent, I think, it modified the common law upon this subject. The subsequent statute of dower did not directly repeal this statute. If it was repealed at all, it was by implication; but where there are two statutes, and one can apply to the subject specified in the statute generally, and the other can be considered as an exception to the general rule established by the statute, both should stand. This, I think, will be found to be the proper construction of the general law upon the subject of dower, and the special statute above referred to. As it appeared to me the former points considered would probably be decisive of the case, I placed most thought upon them. For the reasons assigned the demurrer is hereby overruled.