Ross, District Judge.
The plaintiff in error is the widow of L. M. Black, who, during his lifetime, and while plaintiff in error was his wife, owned an undivided two fifths of a certain mining claim, situate in the then territory of Montana, called the “A. M. Holter Quartz Lode.” Black, on the 7th of March, 1879, sold and conveyed his interest in the claim to one Burton, his wife, the plaintiff in error, not joining in the conveyance. In July, 1881, Black died intestate. The interest so conveyed to Burton subsequently passed by various mesne conveyapces to the defendant in error. On the 29th of October, 1883, an application was made to the proper United States land office by the immediate predecessor in interest of the defendant in error to enter the claim, and such proceedings were had in the matter of the application that on the 19th of November, 1889, a patent therefor was issued by the United States to the applicant. No protest, adverse claim, or objection of any character was made by the plaintiff in error at any stage of the proceedings in the land department. A statute of Montana, passed in 1876, provides as follows:
“A widow shall be endowed of the third part of all lands whereof her husband was seised of an estate of inheritance at any time during the marriage, unless the same shall have been relinquished in legal form. Equitable estates shall be subject to the widow’s dower, and all real estate of every description contracted for by the husband during his lifetime, the title to which may be completed after his death.” Section 1, Laws Mont. 1876, (9th Sess.) p. 63.
This statute the supreme court of Montana decided, in the case of Chadwick v. Tatem, 9 Mont. 354, 23 Pac. Rep. 729, continues in force. Under and by virtue of its provisions the plaintiff in error, on the 20th *860 of January, 1891, commenced the present suit to establish her alleged right to dower in the property.
The principal question presented and argued by counsel is whether a mere mining claim, an undivided interest in which is confessedly all that the husband of the plaintiff in error owned at the time of his sale and conveyance to Burton, and all that the vendee owned at the time of Black’s death, is a sufficient estate upon which to predicate a right of dower.
Congress, by statute, conferred, with certain limitations not here necessary to be stated, on all locators of mining claims, their heirs and assigns, so long as they comply with the laws of the United States, and with state, territorial, and local regulations not in conflict with the laws of the United States governing their possessory title—
“The exclusive right of possession and enjoyment of all the surface included within the lines of their locations, and of all veins, lodes, and ledges throughout their entire depth, the top or apex of which lies inside of surface lines extended downward vertically, although such veins, lodes, or ledges may so far depart from a perpendicular in their course downward as to extend outside the vertical side lines.of such surface locations.” Rev. St. § 2322.
It is apparent that the possessory right thus conferred upon the locator may be, and often is, of great value, and it has been many times decided, and is well and thoroughly settled, that such claims may be sold, transferred, mortgaged, and inherited. But the thing so granted or inherited can only be the thing the grantor or decedent, as the case may be, owned; that is to say, the right to explore the mine and extract the minerals therefrom under the existing laws and regulations upon the subject. Congress has also provided that the locators of such claims may purchase the property, and has prescribed the terms and conditions upon which the government title may be thus acquired. Rev. St. §§ 2325-2340. But the locator is not compelled to buy. He may never do so. A notable instance of this sort is shown in the case of Forbes v. Gracey, 94 U. S. 762, where it is said by the supreme court that the Consolidated Virginia Mining Company, for the purpose of evading a state tax upon the mine it was possessed of and working, permitted its investment in the mine, said to be worth from $50,000,000 to $100,000,000, to rest on such a bare claim, “this mere possessory right, when it could at a ridiculously small sum compared to the value of the mine obtain the government’s title to the entire land, soil, mineral and all.” As the right given to possess, explore, and extract the minerals from the located claim is not made dependent upon an application to purchase it, in many instances there is never even an application to purchase made by the locator or his successor in interest. In the case under consideration no such application was made prior to the death of the husband of the plaintiff in error. The government’s offer to sell this mining claim had not been accepted, and no step of any nature looking to the acquisition of the title of the United States thereto had been taken by the locators, or their successors in interest, up to and *861 for a long time after that event. The title of the United States was therefore then absolutely free and unincumbered. No legal reason existed why congress could not then have withdrawn the property from sale, or made any other disposition of it. That the government, in its wisdom and generosity, continued to permit the locators to enjoy the fruits of its property by extracting the minerals therefrom, and that a right thus conferred upon and enjoyed by locators constitutes property, and property often of great value, which is treated by the courts and legislatures of various states as realty in dealing with the rights of claimants thereto as between themselves and third parties, in no respect affect the true title to the property, which all the time remained in the United States free and unincumbered, because its offer to sell had not been accepted, and it had done nothing to part with its title. To hold that the title thus held by the government can be in any way affected or incumbered by any state legislation would be to restrict, to such extent, the absolute and undoubted right of congress to dispose of the public property of the United States as it deems best. While the possessory right to which reference has been made constituted in the locator, owning and enjoying it, property of value, which could be sold, transferred, mortgaged, and inherited, and, we may add, forfeited by abandonment, it constituted, and could constitute, no legal interest or estate in the property as against the United States or its grantee, whose title could not be burdened by the right of dower, or otherwise, by virtue of any state legislation. At any time prior to contracting to purchase the property the locator may abandon the claim. Is the government to be held bound to convey the claim while the locator is at liberty to abandon it? Such abandonment often occurs from one cause or another; sometimes because the claim proves to be worthless; in many instances after the locator has enjoyed all of the substantial fruits of the property by the extraction of all of the paying ore. This the government permits to be done in pursuance of the eminently wise policy of encouraging the discover}', exploration, and production of the precious metals; but it cannot properly be said to be legally bound to do so. Nor would it seem that any equitable principle would be violated should congress see proper to terminate the possessory right conferred by it where the locator, or his successor in interest, as in the case before the court in Forbes v. Gracey, supra, persistently declines, while reaping the fruits by extracting the substance of the property, to accept its offer to part with the title for a mere pittance compared to its value?
It is the established doctrine in respect to a pre-emptor entering upon the public land of the United States, under the provisions of the late pre-emption law, that his settlement, “even when accompanied by an improvement of the property, did not confer upon the settler any right in the land as against the United States, or impair in any respect the power of congress to dispose of the land in any way it might deem proper; that the power of regulation and disposition conferred upon congress by the constitution only ceased when all the preliminary acts prescribed by law for the acquisition of the title, including the payment oí *862 the price of the land, had been performed by the settler;” and that, until all of these requirements had been complied with, the settler had only the privilege to purchase in preference to others in case the government should sell. Shepley v. Cowan, 91 U. S. 330, and authorities there cited. In the case of the pre-emptor the statute required the application to purchase the land to be made within a designated time, while in the case of a locator of a mining claim there is no such limitation; and the pre-emptor was denied the privilege of conveying his interest prior to purchase from the government, while the locator of a mining claim is accorded that privilege. But it is not perceived that these differences make inapplicable here the principle governing the ruling in respect to the rights of pre-emptors upon the public lands after settlement, accompanied by improvement of the property, but before its entry.
For the reasons stated, we think it very clear that a mere locator of a mining claim, owning only the possessory right conferred by the statute, has no such estate in the property, as against the United States or its grantee, as that the rights of'dower can be predicated thereon by virtue of any state legislation.
It is equally clear that, if the common law could be resorted to, no such -right would exist. The interest of a locator of a mining claim is, in some respects, not unlike that of a copyholder at common law. Both had their origin in local custom, and in each the custom crystallized into law. The copyholder held his land by the custom of the manor, and, while the fee remained in the lord, the right to the possession and enjoyment of the premises was in him. He might alien his lands at will, .and on his death they descended to his heirs. His estate might be taken in execution for the payment of his debts, and, if he became bankrupt, it passed to his trustee. But, unlike the locator of a mining claim, the copyholder held upon no condition. He did not have to comply with rules and regulations established by the law of the manor, nor could the conditions under which he held be changed at the will of the lord. He was not required to perform labor or make improvements upon the land annually, or at all. The copyholder was practically a freeholder, and yet, because the fee was in the lord, the common law, which favored dower, denied it to the widow. 1 Scrib. Dower, p. 363; Duncan v. Phosphate Co., 137 U. S. 652, 11 Sup. Ct. Rep. 242.
As the views above expressed go to the root of the case of the plaintiff in error, the judgment of the court below, which was against her, though based on other grounds, must be affirmed, without reference to other questions presented and argued by counsel. The judgment is accordingly affirmed.