### SCOTT v. LOCKEY INV. CO. et al.

(Circuit Court, D. Montana. November 6, 1893.)

No. 202.

1. PUBLIC LAWS—PATENTS—CONCLUSIVENESS IN COURT.

Where a patent for agricultural land has issued to one who entered it under "additional soldiers' homestead" scrip, the determination of the land department that the land was of the character described, and that the patentee was entitled to enter it under such scrip, is final, and will not be reviewed by the courts.

2. SAME—FRAUD—RIGHTS OF PRIVATE PERSONS.

Where such determination in favor of the patentee is procured by fraud, such fraud is committed against the United States, which alone can complain of it; and hence a bill to quiet title, filed by one who claims mineral rights to the land in question, against the patentee, on the ground of such fraud, is bad on demurrer.

In Equity. On demurrer to bill. Bill by William H. H. Scott against the Lockey Investment Company and Richard Lockey to quiet title. Demurrer sustained and bill dismissed.

Toole & Wallace, for complainant.

George F. Shelton, Henry N. Blake, W. E. Cullen, and M. Bullard, for defendants.

KNOWLES, District Judge. Complainant in this case has presented a bill to quiet title to certain premises described as mining claims. It is alleged that defendants claim title to the same by virtue of a patent to the premises from the United States. The patent, it appears, is to the premises as agricultural land. It is averred in the bill that the claim described in the first cause of action was located on the 18th day of March, 1887; that the claim described in the second cause of action was located on the 17th day of December, 1886. It appears that the patent bears date June 13, 1889; that the entry was made in September, 1888. When the application to enter the land was made, does not appear. The title of plaintiff, it will thus be seen, is derived from a location of the premises as mineral land; that of defendants, by virtue of a patent from the United States. The plaintiff has, therefore, only a possessory title, or easement, that is difficult to describe. The plaintiff asks to have the patent set aside, upon two grounds: The first is that the defendants claim under and by virtue of conveyances from one Samuel R. Patterson and wife, patentee of said premises, as a part of lot 2; that the entrance of said land was made with a piece of additional soldiers' homestead scrip, issued under certain acts of congress, respectively, as follows: 12 Stat. 392; 13 Stat. 35; 14 Stat. 66; 17 St. 49; and Id. 333,—relating to soldiers'

homestead rights, and the homestead rights of minor children, heirs of deceased soldiers and sailors. It is alleged, as one of the grounds which make the patent void, that Samuel R. Patterson was not a minor heir of Samuel Patterson, deceased, at the time of the entry of said land, but was at that date over 25 years old, all of which was known to said Lockey at the date of entry; that Lockey was the real party in interest; that the said Samuel R. Patterson never saw the land, and it was not entered for his benefit. It is not averred that the said Samuel R. Patterson was not an heir of Samuel Patterson, deceased, but that he was not his minor heir. The second ground upon which it is claimed that the patent should be canceled is that the premises were known mineral land at the date of the entry of the land, and that Lockey never filed an affidavit of its nonmineral character. To the bill the defendants filed their general demurrer upon the ground that the bill did not state facts sufficient to constitute a cause of action. There is no objection as to the form in which these issues are presented, or of the demurrer.

As to the first ground, it may be stated that the land department was called upon to determine as to whether the said Patterson was a proper man to enter said land, and whether he had performed the necessary acts to entitle him to make the same. In the case of Johnson v. Towsley, 13 Wall. 72, the supreme court said:

"That the action of the land office in issuing a patent for any of the public lands subject to sale, by pre-emption or otherwise, is conclusive of the legal title, must be admitted, under the principle above stated; and in all courts, and in all forms of judicial proceedings, when this title must control, either by reason of the limited powers of the court, or the essential character of the proceedings, no inquiry can be permitted into the circumstances under which it was obtained."

In the case of Smelting Co. v. Kemp, 104 U. S. 640, the supreme court said:

"The execution and record of the patent are the final acts of the officers of the government for the transfer of its title; and, as they can be lawfully performed only after certain steps have been taken, that instrument, duly signed, countersigned, and sealed, not merely operates to pass the title, but is in the nature of an official declaration by that branch of the government to which the alienation of the public lands, under the law, is intrusted, that all the requirements preliminary to its issue have been complied with."

In the case of Minter v. Crommelin, 18 How. 87, the supreme court, in speaking of patents, said:

"The rule being that the patent is evidence that all previous steps had been regularly taken to justify making of the patent."

It may be said, also, that if there was any fraud committed in the representation as to the character of Patterson, or in any representations he may have made in procuring the patent,—as to whether it was for himself, or otherwise,—they were representations to the government through its officers, and any fraud perpetrated thereby was upon the government, and not upon plaintiff. The government is the only one who can take advantage of such fraud. Vance v. Burbank, 101 U. S. 514; U. S. v. San Jacinto Tin Co., 125 U. S. 281, 8 Sup. Ct. 850.

The second ground presents a question of more difficulty, perhaps. From the fact that the land was known to be mineral at the date of entry, according to the statement in the bill, it is urged that the land was reserved from sale as agricultural land and could be sold only as mineral land. But the question arises, how and by whom is land classed as mineral or agricultural? It is held by the supreme court that the land department of the government is intrusted with the power of determining to what class any piece of land for which an application to enter is made belongs. In the case of Steel v. Refining Co., 106 U. S. 447, 450, 1 Sup. Ct. 389, the supreme court, in considering this question, said:

"And the inquiry thus presented must necessarily involve a consideration of the character of the land to which title is sought,—whether it be mineral, for which a patent may issue, or agricultural, for which a patent should be withheld,—and also as to the citizenship of the applicant. * * * That department, as we have repeatedly said, was established to supervise the various proceedings whereby a conveyance of the title from the United States to portions of the public domain is obtained, and to see that the requirements of different acts of congress are fully complied with. Necessarily, therefore, it must consider and pass upon the qualifications of the applicant, and the acts he has performed to secure the title, the nature of the land, and whether it is of the class open to sale. Its judgment is that of a special tribunal, and is unassailable, except by direct proceedings for its annulment or limitation."

In the case of French v. Fyan, 93 U. S. 169, the supreme court held that the land department had the right to determine whether or not land was swamp land. This case should be distinguished from a case where land is absolutely reserved from entry and sale, such as land included in a military reservation. Then there is no jurisdiction in the land department to make a sale or conveyance of the same. But when an application is made to enter a certain piece of land, which is not specially reserved from sale by a definite description, and the application is made to enter it as agricultural land, then the land department must, of a necessity, determine whether or not it is agricultural land. It would certainly be against public policy to allow the land department to make a conveyance of a piece of land as agricultural, and leave it an open question, to be determined by a court, or a jury, as to whether or not the land was agricultural land. Such a conveyance would be of little value to a patentee. For this reason, I think it must be held that the land department conveyed to the grantor of defendants the legal title to the land, as far as that title was in the government.

According to the bill, the plaintiff had a grant of a mining right, which entitled him to the possession of the premises. Under the decisions of the supreme court, it was held by this court in the case of Black v. Mining Co., 49 Fed. 549, that it was difficult to class the title called a "mining claim;" that, under the statutes and decisions of the supreme court, it could be classed as a possessory title, carrying with it an interest in the estate. This case came up for review in the circuit court of appeals for the ninth circuit. 3 C. C. A. 312, 52 Fed. 859. In that case the court held that the locator of a mining claim does not possess such a title in his location as

that the rights of dower can be predicated thereon, by virtue of any state legislation, as against the United States. In the case of Belk v. Meagher, 104 U. S. 279, 283, the supreme court held that congress had seen fit, in its legislation in regard to lands valuable for minerals, to make a possession thereof by virtue of a location separable from the fee, while the paramount title remained in the United States. Could the plaintiff, with this possessory mining right, maintain an action against the United States to quiet its title to this possessory right, even if it could sue the United States in such an action? The answer must be, he could not. How, then, can such an action be maintained against its grantor, who has only the title the United States possessed in the land,—that is, the paramount title in fee?

A part of the prayer to this bill is "that the conveyance to defendant, and under which it held, may be annulled and canceled and set aside, and the cloud upon plaintiff's title thereby removed." A private person cannot maintain an action to set aside and annul a patent from the United States for fraud committed on the United States. It was so held, in the case of Mowry v. Whitney, 14 Wall. 434. This doctrine was approved in U. S. v. San Jacinto Tin Co., 125 U. S. 274, 281, 8 Sup. Ct. 850, when the question of the title to land was involved. The matters of fraud here charged are committed, if at all, against the United States.

For these reasons, I think the demurrer should be sustained. In so deciding, I do not hold that plaintiff has no rights to his mining possessions. That may depend upon whether he has lost any rights by not contesting the application of Patterson to enter the ground and receive a patent therefor. Neither do I hold that upon a proper statement of facts, making it appear that he has a right to purchase the land in controversy, the defendants could not be compelled, in a proper suit, to convey to him the legal title to the same. But, under the allegations in this bill, he has no standing in this court, and I do not see how he can amend it so as to give him such a standing. It is therefore ordered that the demurrer be sustained and the bill dismissed.