In re McCARTY'S ESTATE.

(Third Division. Fairbanks. January 26, 1907.)

No. 581.

1. CURTESY (§ 11*)—RELEASE—CONVEYANCE TO WIFE.

The husband conveyed by quitclaim the upper half of his placer mining claim to his wife, who leased it for mining purposes until the mineral should all be extracted. Subsequently the wife died intestate, and the husband was appointed administrator of

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

her estate. He received her royalty of the gold and gold dust extracted from her part of the mining claim by her lessees, and on final account retained one-half thereof as surviving husband, and paid the other half to her children and heirs. Upon appeal from the action of the probate court refusing to approve this distribution, *held*, that the gold dust delivered into the hands of the administrator by the wife's lessees was "personal property," and under section 169 of the Civil Code of Alaska the surviving husband was entitled to receive one-half.

[Ed. Note.—For other cases, see Curtesy, Cent. Dig. § 35; Dec. Dig. § 11.*]

Daniel A. McCarty, the administrator, located Discovery placer mining claim on Fairbanks creek, in the Fairbanks mining district, Alaska, on September 12, 1902. Sarah J. McCarty was his wife at that time. Subsequently, and on March 14, 1904, the husband deeded the upper half of the claim to the wife by quitclaim deed, which reads, after excluding the merely formal parts:

"That the said party of the first part, for and in consideration of the sum of one (1) dollar, lawful money of the United States of America, and other good considerations to him in hand paid by the said party of the second part, the receipt whereof is hereby acknowledged, has granted, bargained, sold, remised, released, and forever quitclaimed, and by these presents does grant, bargain, sell, remise, release, and forever quitclaim, unto the said party of the second part, and to her heirs and assigns, that certain piece of placer mining ground situate in the Fairbanks mining and recording district, Third judicial division, of Alaska, and described as follows, to wit: The upper one-half (½) of Discovery claim on Fairbanks creek.

"To have and to hold all and singular the said premises, together with the appurtenances and privileges thereunto incident, unto the said party of the second part, her heirs and assigns, forever."

The deed was duly acknowledged and recorded on the day it bore date. The husband retained, and yet owns and works, the lower half of the claim.

On March 21, 1904, Sarah J. McCarty executed and delivered to R. W. Shepherd a contract in writing by which Shepherd agreed to enter upon her half of Discovery claim, erect works for mining, and to extract therefrom the placer gold therein, and "to pay to said lessor a royalty or percentage of forty (40) per cent. of all gold dust, ores, and minerals taken from said premises after January 1, 1905," etc. This contract was recorded as required by law. The contract provided that work should be carried on "continuously during the working season of both winter and summer" until all pay dirt should be extracted. Shepherd entered under the contract, and the work of extracting the mineral was begun by him, and continuously carried on by one Crowley in his name and under his contract.

Sarah J. McCarty died intestate on February 9, 1905, leaving surviving Daniel A. McCarty, her husband, Thomas A. (Evans) McCarty and Mrs. Jessie Schmitz, a son and daughter by a former deceased husband, and Daniel G. McCarty and Florence McCarty Wobber, a son and daughter by her surviving husband.

On March 28, 1905, the surviving husband applied for letters of administration upon the estate of his deceased wife. Letters were regularly issued to him. He gave bond, took the oath, filed an inventory and appraisement of the estate, and gave notice to creditors. In the meantime Crowley continued to extract the placer gold from the upper half of the claim under the Shepherd contract. On September 23, 1905, the administrator filed his first semiannual account. His account shows the receipt by him, from the Shepherd-Crowley mining, of the sum of $65,508.08, being the 40 per cent. of the whole amount of gold taken from the upper half of the claim up to that time. He took credit for a total expense of $5,922.15, "leaving for distribution among the heirs of said estate the sum of $59,585.93." The account also contained a statement made

by the administrator showing the proposed method of distribution of the sum on hand as follows:

Distribution Agreed upon by the Heirs of the Estate of Sarah J. McCarty, Deceased, and Payments Made by Daniel A. McCarty, as Administrator, to the Respective Heirs.

Amount to be distributed as shown by foregoing account.. $59,585 93

Distributed as follows:

| | | |
|---|---|---|
| Paid to Mrs. Jessie Schmitz | $ 7,484 | 49 |
| Paid to T. A. McCarty | 7,484 | 49 |
| Paid to Daniel G. McCarty | 7,484 | 49 |
| Paid to Florence McCarty | 7,484 | 49 |
| Paid to Daniel A. McCarty | 29,647 | 97 |

$59,585 93

The heirs accepted the sums so set apart in his report. No further fund belonging to the estate came into the hands of the administrator.

Thereafter, and about October 1, 1905, the Shepherd lay on the upper half of Discovery, the trust estate, was abandoned by Shepherd and Crowley, and on November 18, 1905, Daniel A. McCarty, by Daniel G., his attorney in fact, conveyed all his interest in that half of the mining claim to the four children. This deed was acknowledged and recorded on November 21, 1905, and simultaneously with its delivery to them Thomas A. McCarty, Daniel G. McCarty, and Nettie F. Wobber, three of the four heirs, gave a full release of all claims to the administrator for their shares in the estate, and thereafter, and on June 9, 1906, gave a further release, disclaiming—

"any and all rights, claims, and demands against said administrator, and against the property of said estate which came into the hands of the administrator, and against said administrator's bond, and hereby consent and agree that said bond shall stand solely for the benefit, use, and behoof of the said Jessie Schmitz as security for such amount as said probate court, or any other court, may adjudge or decree to be due and payable to the said Jessie Schmitz by said administrator,

and hereby declare and agree that I will at no time make any claim under said bond against the said administrator or against his surety for any share of said estate that might, could, or should be due me as an heir of said estate."

Jessie Schmitz, the fourth heir, accepted the foregoing distribution of the trust fund and a conveyance of the estate from the surviving husband, but refused to release. Thereafter, and on April 27, 1906, she filed a petition in probate court, praying for citation requiring the administrator to file a final account, and alleging waste of the estate. Citation issued, and the administrator answered. He alleged a full and final compromise and settlement with all the heirs, including Jessie Schmitz, and also made claim to the whole estate as the surviving husband by curtesy. Such proceedings were had before the probate court that on the 18th day of September, 1906, that court made the following findings of fact:

"(1) That Sarah J. McCarty, at the time of her death, was the wife of said Daniel A. McCarty.

"(2) That she died on February 9, 1905, intestate, whereupon said Daniel A. McCarty was appointed administrator of her estate as surviving husband.

"(3) That at the time of her death she was the owner in fee simple, except as against the United States, by virtue of a quitclaim deed thereof made to her by the said Daniel A. McCarty on March 14, 1904, of that certain unpatented placer mining claim known as the upper half of Discovery claim on Fairbanks creek, in the Fairbanks recording district, Alaska.

"(4) That prior to her death, to wit, on March 28, 1904, she executed a mining lease of said mining claim to one R. W. Shepherd, a copy of which is attached to said account.

"(5) That during her lifetime the said R. W. Shepherd entered upon and took possession of said mining claim and commenced mining placer gold thereon, and was doing so at the time of her death, and continued to do so under the terms of said lease until October 1, 1905.

"(6) That during the time said R. W. Shepherd so carried on mining operations upon said mining claim under the terms of said mining

lease he extracted, from such mines as were opened by him during the lifetime of said Sarah J. McCarty, gold dust of the value of $164,439.20, and paid thereof to the said Daniel A. McCarty, in accordance with the provisions of said lease, 40 per cent., to wit, the sum of $65,775.68, in gold dust.

"(7) That said sum of $65,775.68 in gold dust is the total amount received by said Daniel A. McCarty, and is the total amount he was entitled to receive (as such administrator[1]), from the proceeds of the mining operations carried on upon said mining claim, up to October 1, 1905, under the provisions of said lease.

"(8) That said mining claim, subject to said mining lease, is the only property of any kind whatsoever whereof the said Sarah J. McCarty was seised or possessed at the time of her death within the jurisdiction of this court."

And thereupon the probate court made and signed its final judgment, which, after formal statement, was as follows:

"It is ordered, adjudged, and decreed that the said items of expense set out in said final account are proper charges against said estate; that the administrator is entitled and is hereby allowed compensation in the sum of $1,435.51, as allowed by law on the amount accounted for by him; that the said Daniel A. McCarty, as husband of the deceased, is not entitled to curtesy in the unpatented mining claim belonging to said estate; and that there is due and owing to the said Jessie Schmitz from said estate the sum of $7,488.76. And it is ordered, adjudged, and decreed that said administrator forthwith pay to the said Jessie Schmitz the said sum of $7,488.76."

The sum of $7,488.76 is one-fourth of the amount of $29,955.04, retained by Daniel A. McCarty, as the surviving husband of Sarah J. McCarty, and accounted for in his semiannual and final accounts. The probate court thereby determined that Daniel A. McCarty was not lawfully entitled to any part of the estate so left by his deceased wife, but that her children were entitled to the whole thereof.

Both parties filed exceptions to this final decree, and both appealed therefrom to the district court. The cause was tried

[1]Interlined by probate judge.

here on the record from below, and upon the transcript of the evidence taken before the lower court.

Heilig & Tozier, for Daniel A. McCarty.

Miller & De Journel, for Jessie Schmitz.

WICKERSHAM, District Judge. Upon reading and a full consideration of the evidence taken in writing before the probate court and submitted to this court upon agreement, and upon the transcript, records, and files in this case, I am constrained to accept, approve, and to adopt as my own the findings of act made by the probate judge, who heard the evidence, saw the witnesses, and was acquainted with the accounts, except in so far as they are modified in this opinion. This leaves but the single question of the rule of distribution for this court to consider, and as to that I am unable to agree with the conclusions of the probate court.

Chapter 90 of the Code of Civil Procedure of Alaska provides the method for taking appeals from the final orders and judgments of the probate courts to the district court. Section 943 therein provides that upon hearing the appeal the district court or judge thereof "shall determine the issues so raised according to the very right of the matter and make such order in the premises as he may see fit." The district court must, of course, determine the issues within the statute and those equitable rules of practice and procedure commonly applicable to such cases. This section further provides that a copy of the judgment of this court shall be forwarded to the probate judge below, who shall thereupon proceed in accordance with such order. Such order of this court shall be deemed a judgment, from which an appeal will lie to the Circuit Court of Appeals in the manner provided for taking appeals from other judgments of the district court.

The probate court found that Sarah J. McCarty during her lifetime was the owner of the upper half of the mining claim

described in the record; that she executed a mining lease thereof on March 28, 1904, to Shepherd; that he entered upon the ground during her lifetime, began the mining of the gold, and was in possession and at work at the time of her death, February 9, 1905, and continued to work and extract the gold therefrom until October 1, 1905; that during that period he extracted gold dust from the ground of the value of $164,-439.20, and paid thereof to the said Daniel A. McCarty, in accordance with the provisions of said lease, 40 per cent., to wit, the sum of $65,775.68, in gold dust, and no more. Upon the agreed evidence and the whole record submitted to me I approve and adopt those findings as my own.

The record discloses that after paying the expenses of the administration the administrator paid to each of the four children of Sarah J. McCarty a full one-eighth of the net amount received from the sale of the gold dust so received by him, and paid to himself, Daniel A. McCarty, as the surviving husband, the other one-half thereof. To this payment to himself Jessie Schmitz, one of the heirs of Sarah J. McCarty, objects, upon the ground that the whole thereof should have been divided among the four children of Sarah J. McCarty in equal proportions. The probate court sustained this objection, and gave her judgment against the administrator for $7,488.76, being one-fourth of the sum so retained by Daniel A. Mc-Carty as surviving husband.

From this judgment against him the administrator appeals. Jessie Schmitz also appeals from the order of the probate court allowing the administrator the expenses of administration, allowing him compensation as administrator in the sum of $1,-435.51, or any sum, and from the refusal of the probate court to allow her claim for one-fourth of the total value of all gold dust extracted from the decedent's mining claim, less only the actual and necessary expense of extracting the same.

I have examined the contract or mining lease made by Sarah

J. McCarty in her lifetime with Shepherd, and have carefully considered the manner of its fulfillment by the lessees. It is fair and just, and was such a contract as she had a right to make. Its terms were fairly complied with by Shepherd, and the administrator does not seem to have neglected any duty which he owed to the estate in relation thereto. His control of the estate was subordinate to the right of the lessee Shepherd. Section 809, Code Civ. Proc. Alaska. The compensation allowed by the probate court is the percentage fixed by section 869 of the Code, and is approved. The expenses of administration have been found to be just and reasonable by the probate court, and are also approved by me. This leaves only the objection made by the administrator to the judgment against him in favor of Jessie Schmitz for $7,488.76 to be considered. Was Daniel A. McCarty, as the surviving husband of Sarah J. McCarty, entitled to receive and retain one-half or more of the net amount received from the sale of the gold dust? If he was, the judgment against him is wrong; if he was not, it is right.

He claims the fund upon two grounds: First, under section 167 of the Civil Code, providing for the distribution of the personal property of a deceased wife; and, second, under section 56 of the Civil Code, giving the husband a life estate by the curtesy in all lands of which the wife died seised of an estate of inheritance. The original distribution made by the administrator in his semiannual account was upon the personal property theory. Section 169 of the Civil Code of Alaska, creating the rule of descent and distribution of the personal property of decedents, provides:

"Sec. 169. When any person shall die possessed of any personal property, or of any right to or interest therein, not having lawfully bequeathed the same, such personal property shall be applied and distributed as follows: (1) If the intestate shall leave a widow," etc. " * * * (4) If the intestate shall leave a husband and issue, such husband shall be entitled to receive one-half of such residue of the

personal property; but if the intestate leave a husband and no issue, such husband shall receive the whole of such residue of personal property. * * * (6) If there be no husband, widow, or kindred of the intestate, the whole of such residue shall escheat to the United States."

Was the whole of the gold dust so received by the administrator "personal property"? It is conceded that, if it was, the surviving husband was entitled to receive one-half thereof under the fourth subdivision of section 169, supra. It is urged, however, that the status of the property was fixed, at the moment of the death of Sarah J. McCarty, as real estate, and continued to have that character for the purpose of distribution, because the gold dust was separated from the real estate after her death. Being real estate at her death, it continued of that character for purposes of distribution. What is "personal property," as distinguished from "real property," is defined by section 181 of the Civil Code of Alaska as follows:

"Sec. 181. * * * And the term 'real property' includes all lands, tenements, and hereditaments, and rights thereto, and all interests therein, whether in fee simple or for the life of another. The term 'personal property' includes all goods and chattels, moneys, credits, and effects of whatever nature not included in the term 'real property.'"

Land included within a placer mining location, the mining claim, is real property. Ejectment lies to recover possession thereof, and suits to quiet title thereto are sustained. Gold dust extracted therefrom and reduced to possession is personal property. Forbes v. Gracey, 94 U. S. 762, 765, 24 L. Ed. 313; Barringer & Adams, pp. 5, 6. At the time of the death of Sarah J. McCarty, on February 9, 1905, the lessee had mined and extracted from her ground gold dust of the value of $43,987.10, of which, in accordance with the terms of the lease, she was the owner of 40 per cent., or $17,594.84. Under any phase of the question that part of the gold dust must be considered as personal property, of which the surviving hus-

band was entitled to one-half. The lessee was then in the actual possession of the real property under a lease executed by her, and after her death continued to mine and extract the gold dust, until the whole amount accounted for was extracted and paid to the administrator. The administrator was not in the actual possession of the real estate. That remained in the possession of the lessee at all times during the mining of all the gold dust in controversy. Section 809 of the Code of Civil Procedure of Alaska provides for just such contingencies:

"Sec. 809. The executor or administrator is entitled to the possession and control of the property of the deceased, both real and personal, and to receive the rents and profits thereof until the administration is completed, or the same is surrendered to the heirs or devisees by order of the court or judge thereof; but where such property, or any portion thereof, is in the possession of a third person, by virtue of a valid subsisting lease or bailment, the possession and control of the executor or administrator is subordinate to the right of the lessee or bailee. During the time the property is in the possession or control of the executor or administrator, it is his duty to keep the same in repair and preserve it from loss or decay as far as possible."

The administrator continued to receive the rents and profits and proceeds from the mine under the express contract of the decedent and under the terms of this statute. If he had been placed in possession of the real property, it is doubtful if he could have extracted the gold dust, and given it the character of personal property by separating it from the soil in which it was embedded, and thereby changed the course of distribution; but no such fact is before the court. It was mined, extracted, and separated by virtue of the decedent's contract and the law, and came into the hands of the administrator after such separation, and after its character was changed from real to personal property. The change was not brought about by any act on his part. It was a change which he could neither control nor prevent. Whatever his first inventory may have

disclosed, it does not show that he came into possession of the real estate, except constructively, and subject to the actual possession and rights of the Shepherd lease. His semiannual account shows that he received from the Shepherd-Crowley lease, and came into the actual possession of, gold dust of the value of $65,508.08. This account served as well for a supplemental inventory of property coming into his possession subsequent to the inventory made on his first appointment as administrator. Section 808, Code Civ. Proc. There is nothing in the record which estops the administrator as such, nor as surviving husband, from receiving the gold dust as personal property, and nothing to prevent its distribution as such. Filley v. Murphy, 30 Wash. 1, 70 Pac. 107. There is nothing to show that Jessie Schmitz was induced to change her position, to surrender her rights, or to lose an advantage by any act of the administrator or any one else interested in the estate. She has taken all she could get, and at all times demanded more.

The surviving husband also claims the right to the whole of the output of the mine, under the terms of section 56 of the Civil Code, which reads as follows:

"Sec. 56. When any man and his wife shall be seised in her right of any estate of inheritance in lands the husband shall, on the death of his wife, hold the lands for his life as tenant thereof by the curtesy, although such husband and wife may not have had issue born alive."

The first objection to this claim of the surviving husband is that it is barred by his quitclaim deed conveying the ground to the wife. But an examination of that deed discloses that it is an ordinary deed of conveyance, and does not contain any clause barring the husband's rights; nor is any testimony offered to prove that it was so made upon any agreement for the separation of their property, or in anticipation of a separation or divorce between husband and wife. The contrary

appears from the evidence. It was a mere gift from husband to wife, after which she held it in the same way as if she had obtained the title from a third person. Section 15, Civ. Code Alaska. Our statute was adopted from Oregon by the act of Congress of June 6, 1900 (31 Stat. 321, c. 786). Its prior construction by the Supreme Court of that state was adopted with it. In Jenkins v. Hall, 26 Or. 79, 37 Pac. 62, the Supreme Court of that state lays down the rule which justifies this court in concluding that the surviving husband in this case is not barred from his claim to one-half the personal property, nor from his estate by the curtesy, by the form of the deed conveying the title now in question.

Whether or not the surviving husband is entitled to a life estate in the land by the curtesy and to the whole of the gold dust extracted therefrom is an interesting and an important question, but one which it seems not necessary to decide, since, if the former views of the court are correct, he takes that which is in dispute under the personal property statute. He made that distribution, and voluntarily proffered and paid the one-half to the heirs, and is not seeking to recover it. He is entitled to retain the half which he does claim under the provisions of section 169 of the Civil Code, whatever his rights may be under section 56 thereof.

The surviving husband was entitled to receive and retain one-half the gold dust extracted from the upper half of Discovery claim, which he had conveyed to his wife during her lifetime, after the expenses of administration had first been paid, and the order of the probate court to the contrary was error.

That order is vacated, and the cause returned to that court for its action in conformity with the judgment to be entered in this court in line with this opinion.