[Civil No. 1433.   Filed May 4, 1915.]

[148 Pac. 286.]

R. R. EARHART, Treasurer and Ex-officio Tax Collector of the County of Santa Cruz, State of Arizona, Appellant, v. FRANK POWERS, Appellee.

TAXATION—"MINING CLAIM"—"MINE."—A "mining claim" is possessory interest which the locator has under Revised Statutes of the United States, section 2322 (U. S. Comp. Stats. 1913, sec. 4618), as distinguished from a "mine," which indicates that the miner is the owner of the soil, being vendible property distinct from the land itself, and declared by Civil Code of 1913, paragraph 4847, for purpose of taxation, included in the term "personal property," may, without taxing property of the United States, which is exempt, be taxed, and, when nonproductive, have its value determined, for such purpose, as provided by paragraph 4983, as though it were real estate.

   [As to holder of inchoate title to public land as "freeholder," see note in Ann. Cas. 1913D, 328.]

APPEAL from a judgment of the Superior Court of the County of Santa Cruz. W. F. Cooper, Judge. Reversed and remanded, with directions.

Mr. Wiley E. Jones, Attorney General, Mr. Leslie C. Hardy, Assistant Attorney General, and Mr. S. F. Noon, County Attorney, for Appellant.

Mr. Owen T. Rouse, for Appellees.

FRANKLIN, J.—This is an action to recover a tax paid "under protest," and which tax is alleged to be illegal and void. It appears that the plaintiffs and appellees are the owners, and in possession of a group of lode, unpatented mining claims, situate in the Harshaw mining district, Santa Cruz county, Arizona. The gravamen of the complaint is that these mining claims are of the lands and property of the United States, and are therefore not subject to the imposition of a tax by this state. The tax in suit was for the year 1913. A general demurrer to the complaint was overruled, and, after a trial, judgment was entered in favor of the plaintiffs for the amount prayed for.

If the tax in question was imposed by the state upon the property of the United States, it follows, of course, that the imposition of such a tax is illegal. Our Constitution provides: "There shall be exempted from taxation all federal, state, county, and municipal property." Section 2, art. 9, Const. Ariz. But this character of property, called "mining claims," and the title under which they are held, has been so frequently adverted to, and so often defined, as contradistinguished from the title of the United States to the land on which the mining claims are located, that the question does not seem to be one for a serious difference of opinion. By section 2322 of the United States Revised Statutes it was enacted that:

"The locators of all mining locations heretofore made or which shall hereafter be made, on any mineral vein, lode or ledge, situated on the public domain, their heirs and assigns, . . . shall have the exclusive right of possession and enjoyment of all the surface included within the lines of their locations, and of all veins, lodes, and ledges throughout their entire depth." 2 Comp. Stats. 1913, sec. 4618.

The title and right, thus acquired by virtue of a valid location of a lode mining claim upon the public domain, is, until a sale by the government in accordance with the provisions of

the law on that subject, nevertheless subject to the paramount title of the United States to the lands upon which such claims may be located, and such right may be forfeited by a failure to perform the conditions imposed by the government for holding the property, as, for instance, the doing of the necessary annual work thereon required by law. This possessory right, with the enjoyment incident thereto called a mining claim, is, after the acquisition of the title to the land on which it is located by a patent from the government, called a mine. Thus in the simplest language of the law we are advised of the status of this kind of property. By the term "mining claim" the possessory right is indicated, and by the term "mine" the title to the land as distinguished from the mere possessory right thereto is betokened. We find an ample recognition of this distinction in our statute governing the subject of taxation, wherein the use of the words "mines and mining claims" is made to distinguish between the cases in which there is ownership of the land, and therefore perfect title to the mine, and those cases wherein the miner has the exclusive right of possession and enjoyment of the land for mining purposes.

In *Forbes* v. *Gracey,* 94 U. S. 762, 766, 24 L. Ed. 313, it is said:

"The use of the words 'mines or mining claims' is evidently intended to distinguish between the cases in which the miner is the owner of the soil, and therefore has perfect title to the mine, and those in which the miner does not have title to the soil, but works the mine under what is well known in the mining districts, and what is, as we have said, recognized by the act of Congress, as a mining claim. In the first case, the statute makes the tax a lien on the mine, because the title to the mine is in the person who owes and should pay the tax. In the other, the tax is a lien only on the claim of the miner; that is, on his possessory right to explore and work the mine under the existing laws and regulations on the subject. In the former case, of course, the United States has no interest to be protected, and the state is at liberty to declare and enforce such a lien for her taxes. In the latter, also, such right as the mining laws allow and as Congress concedes to develop and work the mines is property in the miner, and property of great value. That it is so is shown most clearly

by the conduct of the mining corporation in whose interest this suit is brought, which, for the purpose of evading this tax, permits its investment in this mine, said to be worth from fifty to a hundred millions of dollars, to rest on this claim, this mere possessory right, when it could, at a ridiculously small sum compared to the value of the mine, obtain the government's title to the entire land, soil, mineral and all. Those claims are the subject of bargain and sale, and constitute very largely the wealth of the Pacific Coast states. They are property in the fullest sense of the word, and their ownership, transfer, and use are governed by a well-defined code or codes of law, and are recognized by the states and the federal government. This claim may be sold, transferred, mortgaged and inherited, without infringing the title of the United States. Why may it not also be made subject to a lien for taxes, and the claim, such as it is, recognized by statute, be sold to enforce the lien? We see nothing in principle or in any interest which the United States has in the land to prevent it.''

That ''mining claims'' are property in the fullest sense of the word, distinct from the land itself, vendible, inheritable and taxable, the following cases may be consulted. *Belk* v. *Meagher*, 104 U. S. 279, 26 L. Ed. 735; *Manuel* v. *Wulff*, 152 U. S. 505, 510, 38 L. Ed. 532, 14 Sup. Ct. Rep. 651; *Elder* v. *Horseshoe Mining & Milling Co.*, 194 U. S. 248, 48 L. Ed. 960, 24 Sup. Ct. Rep. 643. To the same effect in 2 Lindley on Mines, sections 535 to 544, inclusive. But the appellee asserts:

''We know of no decision that has held that the ·possession could be taxed. All the decisions that have been made are on laws authorizing a tax on the products of the claims, or the ore that has been separated from its natural bed; that the tax must be levied on the value of the ore, and not on the ground, and the right of possession has been decided to be liable for such tax.''

This contention in its first aspect is erroneous,. and in its second aspect there is a contradiction in its very terms. There is no difference of opinion concerning the proposition that the land upon which an unpatented lode mining claim is located may not be taxed, for the title to the land is in the United States, but it must follow as of course that, if the

right of possession is not taxable, such right of possession may not be made liable for a tax. And so, as a deduction, it follows necessarily that if such right of possession may be made liable for a tax, such right of possession is subject to taxation. But, as we have seen, such right of possession is property of great value, and is distinct from the land itself, vendible, inheritable and taxable. Thus in *Wood* v. *McCombe,* decided by the supreme court of Colorado, 37 Colo. 174, 119 Am. St. Rep. 269, 86 Pac. 319, which was affirmed on writ of error by the supreme court of the United States (*Elder* v. *Wood,* 28 Sup. Ct. Rep. 263, 52 L. Ed. 464, 208 U. S. 226), the latter court, in speaking of the decision of the Colorado court, said:

"That court held that what was assessed was not the land on which the mining claim was located, but the claim itself; that is to say, the right of possession of the land for mining purposes. It is agreed that the Comstock lode was a 'valid subsisting mining location,' and at the time of the assessment of the tax Wilhelmina Gude was the owner of the undivided interest in it which is in controversy here. Such an interest from early times has been held to be property, distinct from the land itself, vendible, inheritable and taxable. *Forbes* v. *Gracey,* 94 U. S. 762 [24 L. Ed. 313]; *Belk* v. *Meagher,* 104 U. S. 279 [26 L. Ed. 735]; *Manuel* v. *Wulff,* 152 U. S. 505, 510, 38 L. Ed. 532 [14 Sup. Ct. Rep. 651]; *St. Louis Mining Company* v. *Montana Mining Co.,* 171 U. S. 650, 655, 43 L. Ed. 320 [19 Sup. Ct. Rep. 61]; 1 Lindley on Mines, sections 535–542, inclusive. The state, therefore, had the power to tax this interest in the mining claim and enforce the collection of the tax by sale. The tax deed conveyed merely the right of possession and affected no interest of the United States."

By chapter 12, title 49, Civil Code of 1913, mines and mining claims are divided into two classes: Class 1, productive mines and mining claims; class 2, nonproductive mines and mining claims. In said chapter it is provided:

"Sec. 4983. All mines, mining claims or groups of either, as shown in class two, sec. 7 of this act (par. 4980), and belonging to any person, corporation, partnership or association, owning or leasing same, and which are not being worked, or which are being operated and worked, but from which no ore is being extracted, or from which ore is produced without

yielding net proceeds, as contemplated by this act, shall be known as nonproducing mines or mining claims, and shall be taxed as other real estate."

For the purpose of taxation the term "personal property" includes "any interest or equity in a valid claim to non-patented mining claims, either lode or placer." Paragraph 4847, Civil Code 1913.

The evident purpose of paragraph 4983, *supra,* is to afford the basis for a determination of the value of a nonproducing mine or mining claim, for the purposes of taxation, just as the gross product and net proceeds in dollars and cents of a producing mine or mining claim are, by the chapter quoted, made the basis for a determination of the value of such producing mines or mining claims for the purposes of taxation; that the inclusion of a "mining claim" in the term "personal property" as provided by paragraph 4847, *supra,* is clearly a recognition by the legislature that the right of possession, as distinct from the land itself, is made the subject of taxation. All property of every kind and nature whatsoever within this state is subject to taxation, except such property as is specifically exempted by the law, and all such property subject to taxation must be assessed at its full cash value. In other words, all property of whatever kind, capable of private ownership, and which is not by law exempt, is taxable, and we know of no declaration, either of the Constitution or in the legislative enactments, that makes this species of property called "mining claims," which is capable of private ownership, not taxable. The state had power therefore to tax the "mining claims" in question, and if it had been necessary to enforce the collection of the tax by a sale of the property, such a sale would have conveyed merely the right of possession, and affected no interest of the United States. It was error not to sustain the general demurrer to the complaint.

The cause is reversed and remanded, with directions to sustain the general demurrer and dismiss the action.

ROSS, C. J., and CUNNINGHAM, J., concur.