**UNITED STATES of America, Plaintiff,**

v.

**H. B. CLARE, Lester D. Summerfield and Harlan L. Heward, trustees, Defendants.**

**No. 1343.**

United States District Court
D. Nevada.

July 14, 1958.

Howard Babcock, U. S. Atty., and Herbert F. Ahlswede, Reno, Nev., for plaintiff.

Summerfield & Heward, Reno, Nev., for defendants.

ROSS, District Judge.

The collection of lawful taxes must not be frustrated by the claims of private individuals whose rights are junior in point of time, and inferior in point of rank, to those of the sovereign.

In the instant case, the plaintiff's tax lien notice was filed months before the deceased taxpayer or his successors in interest acquired any right or title to the two-ton truck that constitutes the res in this in rem proceeding.

Both on reason and authority, the claims of the plaintiff are superior to those of the successors in interest of the deceased truck owner.

### 1. The Stipulated Facts.

The parties have stipulated the facts in this case, as follows:

On February 19, 1955, Arthur D. Harris, doing business as "Modern Builders", purchased from Casady's Garage, in Austin, Nevada, on a conditional sales contract, an "International" two-ton truck.

On January 9, 1957, Harris died, owing $314.87 on the conditional sales contract. On or about February 17, 1957, at a time when payments were delinquent under the terms of the sales contract to the extent of two months and thirteen days, the Nevada Bank of Commerce, to which Casady had assigned the sales contract, repossessed the truck.

On the same day, following repossession, the Bank sold the truck, at a private sale, to H. B. Clare, one of the defendants, for $321.07, which was the amount outstanding on the truck under the sales contract, plus the cost of repossession. At the time of this latter sale, the fair market value of the truck was $1,250.

Clare, the new purchaser, improved the condition and the appearance of the truck so as to make it more attractive to purchasers and to increase the potential sales price of the machine.

On June 21, 1957, pursuant to a stipulation among the parties to this action, Clare sold the truck for $1,800. All of this money was received by the defendants herein, who, pursuant to notice, paid Clare $321.07 from that fund, and the balance—$1,478.93—is being held by the defendants Summerfield and Heward in a "trust account," subject to the order of this Court.[1]

At the time of the two sales of this truck, and at the time of repossession of the truck by the Bank, there was on file in the office of the County Recorder of Washoe County, Nevada, a notice of Federal tax lien covering four tax assessments made by the Commissioner of Internal Revenue in 1952, 1953, and 1954, the total unpaid balances of which far exceed the above "trust account," supra, held by the defendants Summerfield and Heward.

Attached to the defendants' "Memorandum for Pretrial Conference," is a copy of a "Notice of Sale", dated February 28, 1957, and executed by V. W. Evans, District Director of Internal Revenue at Reno, Nevada. The noticed sale of the "International" truck therein referred to was not held.

In addition to paying the purchase price of $314.87, Clare had a garage keeper's lien of $636.93, by reason of services rendered and supplies sold to Harris in connection with the truck. No part of that sum has been paid to Clare.

The services and supplies were furnished between February 19, 1955, and February 18, 1957, or long after the filing of the notice of the Federal tax lien covering the assessments hereinbefore set forth.

### 2. The Two Questions of Law.

It is agreed that only two questions of law are presented in this case. Those questions, cognate in character, are the following:

"1. Do the rights of the Government rise any higher than those of the taxpayer?

"2. Were the rights of the taxpayer and of the Government terminated on or about February 17, 1957, at which time the taxpayer was in default upon the conditional sales contract for a period of two months and thirteen days, and at which time the Nevada Bank of Commerce repossessed the truck, and on the same day following repossession, sold the truck to H. B. Clare?"

---

1. In the Pretrial Order, it is stated that out of the $1,800 sales proceeds, "$321.07 was paid to the *Bank* to satisfy the amount of the unpaid purchase price installments under the sales contract, and the balance of $1,478.93 is being held by the defendant trustees," etc. (Emphasis supplied.) In the Court's view of the case, this discrepancy is immaterial.

3. The Federal Tax Lien, Prior in Time, Is Also Prior in Right as Against the Claims of the Decedent's Successors in Interest.

Section 6321, Lien for Taxes, provides as follows:

Section 6321. Lien for taxes.

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property *and rights to property,* whether real or personal, belonging to such person." (Emphasis supplied.) 26 U.S.C.A. § 6321.

As we have seen, Harris purchased the truck on February 19, 1955. On that date, the plaintiff's lien, notice of which had been filed in the Office of the County Recorder of Washoe County, at Reno, Nevada, on December 10, 1954, became fastened upon the res, and continued to be so fastened until the truck was sold by Clare for $1,800. It is stipulated that from that sales price there should be deducted the sum of $321.07, representing the full amount outstanding on the conditional sales contract plus costs of repossession. That leaves a balance of $1,478.93 that is subject to the plaintiff's lien.

It is stipulated that the notice of Federal tax liens represented the sum of $2,451.82. That amount more than absorbed the entire balance of $1,478.93 subject to the plaintiff's lien. As we shall see in a moment, this left nothing for Clare's gasoline bill of $636.93, junior in rank to that of the plaintiff's tax claim.

In the leading case of Forbes v. Gracey, 1877, 94 U.S. 762, 767, 24 L.Ed. 313, which dealt with a Nevada tax imposed upon the property of the Consolidated Virginia Mining Company, the Supreme Court said:

"This (mining) claim may be sold, transferred, mortgaged, and inherited, without infringing the title of the United States. Why may it not also be made *subject to a lien for taxes, and the claim, such as it is, recognized by statute, be sold to enforce the lien?* We see nothing in principle or in any interest which the United States has in the land to prevent it." (Emphasis supplied)

4. Conclusion.

In the very recent case of Bank of Nevada v. United States, 9 Cir., decided on December 31, 1957, rehearing denied on February 7, 1938, 251 F.2d 820, 826, certiorari denied, April 28, 1958, 356 U.S. 938, 78 S.Ct. 780, 2 L.Ed.2d 813, the late Judge Lemmon quoted the following language in United States v. Kings County Iron Works, 2 Cir., 1955, 224 F.2d 232, 237:

"The mere attachment of the government's (tax) lien gives it a fully perfected claim superior to all except mortgagees, pledgees, purchasers, or judgment creditors of the taxpayer."

Judge Lemmon then commented:

"No amount of legalistic sophistry can erode the Gibraltar of that rule."

Accordingly, this Court holds that the Federal tax liens be foreclosed against the proceeds of the sale hereinabove referred to, namely, $1,800, less the sum of $321.07, or a net of $1,478.93, and that such proceeds be paid to the plaintiff for application on the tax liabilities of Arthur D. Harris and Joyce K. Harris.

Counsel for plaintiff is directed to prepare and lodge with the Court findings of fact and conclusions of law, and form of judgment which when adopted and filed will constitute the findings, conclusions and judgment of this Court.